YATES, Presiding Judge,
concurring in the result.
Section 30-4-9, Aa.Code 1975, provides:
“The husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations.”
Such contracts between a husband and wife, whether made before or after marriage, are recognized as valid. Tibbs v. Anderson, 580 So.2d 1337 (Ala.1991); Campbell v. Campbell, 371 So.2d 55 (Ala.Civ.App.1979). These agreements are subject to close scrutiny. § 30-4-9; Payne v. Payne, 284 Ala. 699, 228 So.2d 15 (1969).
In Tibbs, supra, the wife signed an agreement, just two hours after the couple married, that provided that she waived her right to any interest in real or personal property the husband acquired before the marriage. When the husband died, the wife sought an elective share of his estate. The trial court determined that her claim was barred. The supreme court held that § 43-8-72 permits a spouse to waive all statutory rights in the other spouse’s property before or after marriage. The court noted that although the parties presented their arguments under caselaw interpreting prenuptial agreements, a husband and *390 wife can contract with each other pursuant to § 30-4-9, and the judgment could have been affirmed on that ground.
In Payne, supra, the wife had started divorce proceedings against the husband on several occasions, and she finally secured a divorce shortly after the husband had transferred his interest in a motel to her. The husband had purchased the motel in 1964. The husband was hospitalized for alcoholism in April and again in May 1966. In September 1966, the husband transferred his interest in the motel to the wife. In November 1966, the husband was hospitalized again. He argued that the wife exercised undue influence over him when she was the dominant party in their relationship. The court held that the trial court did not err in refusing to set aside the conveyance.
Taylor v. Martin, 466 So.2d 977 (Ala.Civ.App.1985), involved two contracts between the parties who were then husband and wife. Both contracts, executed at different times, required the wife to sign a joint federal income tax return with the husband for the preceding year, and in consideration of her signing the return, the husband agreed to make periodic payments to the wife during the next school year to be used for college expenses for the wife’s daughter from a previous marriage. Shortly after the execution of the second contract, the wife filed for a divorce; the divorce was later granted. She sued the husband, alleging a breach of both contracts because he failed to make some of the payments under each of the contracts. The trial court found in favor of the wife; this court affirmed.
In the present case, the parties were married in 1988. In 1993, the wife inherited over $500,000, which was placed into a trust. The husband has a degree in accounting; he also has a master’s degree in business from Harvard University. The husband was named as a cotrustee. It appears that since the time of the wife’s inheritance, the wife worked only seasonally and the husband has held relatively low-paying jobs[1] and that the parties have lived off the assets of the trust. On December 10, 1999, the husband resigned as cotrustee. He testified that the wife asked him to resign because of the way he had handled a “margin call” on an account. The husband then moved to Pennsylvania in search of better employment. On February 28, 2000, he signed an agreement releasing all his interest in the trust. The release provided:
“Know all men by these presents that for and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I, the undersigned Richard Ernest Miller, Jr., do hereby release, relinquish, forgo, renounce, give up and forever abandon any and all interest I may have as a beneficiary of that certain Sol/Miller Revocable Living Trust dated December 30,1992, consisting of nineteen typewritten pages, executed by myself and Lily Heart Sol, including, but not limited to, my interest as a current beneficiary under said trust, any right I may have to insist that the trust be perpetuated beyond this date and any right I may have to the distribution of any assets of the trust upon its dissolution.
“Further, I hereby release, relinquish, forgo, renounce, give up and forever abandon any right I may now have, or may have ever had, to claim or contend that the arrangement between myself and Lilly Heart Sol whereby we both *391 executed the above described trust and our separate last wills and testaments constituted joint and mutual wills or a contract to make a will, and I hereby confirm the right of Lily Heart Sol to make a new will without any restriction whatever.
“And finally further, I hereby ratify and confirm my resignation as a trustee of the above described trust by typewritten instrument signed by me dated December 10,1999.”
On March 22, 2000, the husband testified that the parties’ son had called him to wish him “happy birthday,” and that he had spoken with the wife and stated “I’d made a decision, I was coming home and I wanted to try to save the marriage.” On March 24, 2000, the wife filed a complaint for divorce.
The husband admitted in his testimony that he voluntarily signed the release agreement drafted by the wife’s attorney. It is clear from his testimony and from the fact that he served as cotrustee that he knew the full value of the trust when he relinquished his interest.
Section 30-4-9 allows husbands and wives to enter into contractual transactions with each other. That is, one spouse is allowed to convey to the other his or her interest in marital property before divorce or death. Doing so takes the property out of the marital estate, leaving it as the separate property of the spouse to whom it is conveyed. The husband was well-educated, and sophisticated in business matters, and he admitted that he was aware that he was relinquishing his interest in the trust. Although the husband stated that he signed the agreement because of his desire to reconcile with the wife, he admitted that he was not coerced into signing the agreement. While I agree that the trust was used as marital property during the marriage, the trust became the separate property of the wife through a valid, express agreement signed by the husband relinquishing his rights to the distribution of any assets of the trust.
Based on the foregoing, I concur in the result.

. During 1998 to 1999, the husband earned approximately $50,000. However from 1992 to 1997 and during 2000, he did not earn over $10,000 year.